UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CINDY BARRETT, )<br>)<br>Plaintiff, )<br>) Case No. 12-CV-2024<br>v. )<br>)<br>STATE OF ILLINOIS DEPARTMENT, )<br>OF CORRECTIONS, )<br>)<br>Defendant. )<br>) | |

**OPINION**

This case is about a claim that the Illinois Department of Corrections interfered with an employee's rights under the Family and Medical Leave Act. The Department of Corrections has an attendance policy of progressive discipline, wherein an employee is given increasingly strong penalties for being absent from work without approval or authorization. The policy also included a reset switch that forgave all prior unauthorized absences if an employee had no unauthorized absences in a two-year period.

Over the span of seven years, Plaintiff accumulated twelve unexcused absences from work. After her twelfth absence, and in accordance with employee policy, Plaintiff was discharged. Two years later, she sued, alleging that the Department of Corrections failed to treat three of the twelve absences as authorized. Plaintiff asserts that she was entitled to protected leave on those three dates to take care of her family and her medical needs, as mandated by the Family and Medical Leave Act. Because (1) the absences that she challenges occurred more than seven years before she filed her claim; and (2) the FMLA has a two-year statute of limitations,

only permitting an action to be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought"; and (3) this court interprets the phrase "last event constituting the alleged violation" to be the denial of FMLA-protected leave, rather than her ultimate discharge from employment; this court finds that Plaintiff's claim is time-barred.

The case is before the court on both parties' cross-motions for summary judgment. This court has reviewed Defendant's Motion for Judgment on the Pleadings (#18) and Plaintiff's Response (#20); Defendant's Motion for Summary Judgment (#24), Plaintiff's Response (#32), and Defendant's Reply (#33); and Plaintiff's Motion for Partial Summary Judgment (#26) and Defendant's Response (#30). Following this careful review, this court finds that Plaintiff's claim is time-barred. Accordingly, Defendant's Motion for Summary Judgment (#24) is GRANTED and Plaintiff's Motion for Partial Summary Judgment (#26) is DENIED.

**Background**

Plaintiff was employed by Defendant Illinois Department of Corrections ("IDOC") in the administrative business office of the Danville Correctional Center. (Plaintiff's Statement of Facts (#32) ("SoF") ¶ 1). IDOC is an employer, as that term is defined by the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). (SOF ¶ 2). The terms and conditions of Plaintiff's employment were controlled by an attendance policy. (SOF ¶ 3). At the time of Plaintiff's discharge, IDOC had a Revised Policy. (SOF ¶¶ 4, 16). Under the Revised Policy, all absences are classified as "authorized" or "unauthorized". (SOF ¶ 5). An unauthorized absence is one for which the absent time was not approved. (SOF ¶ 6). The policy provides that an employee does not serve any suspension or lose pay for any absence before the eleventh

unauthorized absence. (SOF ¶¶ 7, 8). For the eleventh unauthorized absence, an employee is given a 20-day suspension, of which the employee is expected to serve five days. (SOF ¶ 9). An employee may be discharged for his or her twelfth unauthorized absence. (SOF ¶ 10). If an employee sustains a 24-month period without any unauthorized absences, then the unauthorized absence count is reset to zero. (SOF ¶ 11).

The parties agree that Plaintiff was absent without authorization on the following dates: December 15, 2003; June 2, 2004; June 10, 2004; December 8, 2004; December 22, 2004; August 10, 2005; August 3, 2006; October 3, 2007; December 31, 2008; October 30, 2009; January 15, 2010; and May 14, 2010. (SOF ¶ 13). The parties contest whether she was entitled to protected FMLA leave for three of those dates: December 15, 2003; December 22, 2004; and August 10, 2005. (SOF ¶ 14). The 2003 absence was because Plaintiff was diagnosed with pneumonia. (SOF ¶¶ 55-63). The 2004 absence was because Plaintiff's daughter had been hospitalized, and Plaintiff was the only family member available to care for her. (SOF ¶¶ 68-72). Plaintiff admits that she did not specifically request FMLA leave for this absence. (SOF ¶ 74). The 2005 absence was because Plaintiff left work for an hour to attend physical therapy following surgery on her hands. (SOF ¶¶ 77-82). Plaintiff admits that she did not specifically request FMLA leave for this date either. (SOF ¶ 81). The parties also agree that the nine remaining absences were correctly classified as unauthorized and were not protected under the FMLA. (SOF ¶ 15).

At the time of the three absences, the Revised Policy had not yet been put in place, but rather, employment was subject to an earlier attendance policy that permitted discharge upon an employee's tenth unauthorized absence ("Original Policy"). (SOF ¶¶ 4, 17). Under the Original Policy, employees were required to serve three days of a ten-day suspension for their eighth

unauthorized absence and five days of a fifteen-day suspension for their ninth unauthorized absence. (SOF ¶ 18). On October 3, 2007, Plaintiff accrued her eighth unauthorized absence under the terms of the Original Policy. (SOF ¶ 87). Plaintiff served three days of actual suspension for her eighth unauthorized absence beginning on November 28, 2007, lost three days of pay as a result, and returned to work on December 1, 2007. (SOF ¶ 89). The Revised Policy was made effective September 5, 2008. (SOF ¶ 4). Because the Revised Policy, which is more lenient than the Original Policy, was made effective between Plaintiff's eighth and ninth absences, she was not suspended for her ninth and tenth absences. The parties do not discuss whether Plaintiff was suspended for her eleventh absence, as would have been appropriate under the Revised Policy.

Plaintiff accrued her twelfth unauthorized absence on May 14, 2010. (SOF ¶ 12). Following this absence, Plaintiff was suspended pending discharge on September 30, 2010, and discharged on October 15, 2010. (*Id.*)

*Procedural history*

On January 27, 2012, Plaintiff filed her complaint against IDOC. (#1). That complaint stated one count of a violation of Plaintiff's substantive rights under the FMLA and one count of retaliation under the Illinois State Officials and Employees Ethics Act. (*Id.*)

On May 7, 2012, IDOC filed a Motion to Dismiss. (#4). Regarding the Ethics Act claim, IDOC argued that the claim was barred by Eleventh Amendment immunity. (#5) Plaintiff conceded as much. (#9). Regarding the FMLA claim, IDOC noted that Plaintiff had appealed her discharge from IDOC to the Illinois Civil Service Commission, and that that administrative body had approved Plaintiff's discharge. IDOC thus argued that the Illinois administrative proceedings

should bar the present claim under claim preclusion and issue preclusion principles. (#5). On June 28, 2012, Magistrate Judge David G. Bernthal entered a Report and Recommendation, recommending that the Ethics Act claim be dismissed, but that the FMLA claim be permitted to proceed. (#11). On January 3, 2013, this court accepted the Report and Recommendation. (#15).

On January 9, 2013, IDOC filed a Motion for Judgment on the Pleadings. (#18). Responses were due by January 28, 2013. On March 14, 2013, Plaintiff filed an untimely Response. (#20). On March 26, 2013, IDOC filed a Motion to Strike the Response, arguing that it was untimely. (#21). On April 9, 2013, Plaintiff filed her Response to the Motion to Strike, admitting that the filing was untimely but arguing that the delay was not prejudicial. (#23).

On May 16, 2013, IDOC filed a Motion for Summary Judgment. (#24). Also on May 16, 2013, Plaintiff filed her own Motion for Partial Summary Judgment. (#26). On May 22, 2013, Plaintiff filed a Motion to Supplement her Motion for Partial Summary Judgment. (#28). On June 10, 2013, IDOC filed a Response to Plaintiff's Motion for Partial Summary Judgment. (#30). On June 12, 2013, Plaintiff filed her Response to IDOC's Motion for Summary Judgment. (#32). On June 25, 2013, IDOC filed its Reply to its Motion for Summary Judgment. (#33). No timely Reply was filed to Plaintiff's Motion for Partial Summary Judgment.

## Analysis

Plaintiff claims that IDOC interfered with her FMLA rights by classifying her absences on December 15, 2003; December 22, 2004; and August 10, 2005; as unauthorized when they should have been authorized, and that but for this incorrect classification, she would not have accumulated the twelve unauthorized absences justifying her discharge. Plaintiff asserts that her absences on those three dates should have been protected under the FMLA. Defendant's position

is that adjudication of those absences is time-barred by the FMLA's statute of limitations and barred by claim and issue preclusion; or, in the alternative, that her absences were unauthorized because Plaintiff did not follow the procedures required to qualify them as FMLA leave.

**I. Statute of Limitations**

Defendant first argues that it is entitled to summary judgment because the claim is time-barred by a statute of limitations. The statute of limitations for an FMLA claim is as follows:

> (1) In general: Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.
>
> (2) Willful violation: In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c). Plaintiff does not argue in her Response (#32) or her own Motion for Summary Judgment (#27) that the "willful violation" provision in subsection (2) is applicable. Thus, the applicable statute of limitations is two years "after the date of the last event constituting the alleged violation for which the action is brought."

Here, the parties do not dispute any of the relevant dates. The parties agree that Plaintiff was absent on December 15, 2003; December 22, 2004; and August 10, 2005, although they do contest whether those absences were protected under the FMLA. Plaintiff was terminated on October 15, 2010 and filed the present complaint on January 27, 2012. Thus, whether the statute of limitations applies is a question of law: On what date was "the last event constituting the alleged violation for which the action is brought"? The answer turns on what constitutes "an alleged violation". Defendant argues that each absence that was allegedly incorrectly classified

should be treated as a discrete violation, separately contested and with its own limitations period running independently. If Defendant's view of the law is correct, Plaintiff would be barred by the statute of limitations because her most recent disputed absence was on August 10, 2005, making any claim on that date untimely by nearly four and half years. Plaintiff responds that IDOC engaged in an ongoing and continuous violation, with the operative "last event" being when IDOC "treat[ed] the three absences as unauthorized to support her termination." (Pl.'s Response, #32, p. 28). This interpretation would permit her case to proceed.

      As far as this court can tell, the definition of an "alleged violation" for which an FMLA interference action may be brought, in the context of an employment policy that requires an accrual of disciplinary events before an adverse employment action may be taken, is an issue of first impression in the Seventh Circuit. Does the statute of limitations begin on the most recent relevant disciplinary event or on a materially adverse employment action? The question only arises in the specific context of this case, which is when the employee does not contest the validity of the most recent materially adverse employment action, *viz.*, termination of employment, but rather only contests those disciplinary events that were placed in the employee's record at some time outside the limitations period.

      This opinion discusses five reasons why the statute of limitations should run for each disciplinary event. First, the text of the statute and the case law compels that interpretation. Second, the statute of limitations in a Title VII claim, which is similar to the FMLA, starts a new clock for each act or occurrence that the employee wishes to challenge. Third, Title VII's continuing violations doctrine, which could have tolled the statute of limitations, does not apply in cases like the present one. Fourth, the denial or misclassification of an unauthorized absence constitutes prejudice, affording an employee standing to sue. And last, the policy behind

limitations periods suggests that Plaintiff should have brought her case at the time her absence was classified as unauthorized.

*A. Plain text of FMLA statute and elements of FMLA interference claim*

An employee of an FMLA-qualified employer may bring an action if the employer violates 29 U.S.C. § 2615. 29 U.S.C. § 2617(a)(1). Section 2615 mandates that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).[1] "To prevail on an FMLA interference claim, an employee need only show that his employer *deprived him of an FMLA entitlement*; no finding of ill intent is required." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (emphasis added). The elements of an FMLA interference claim are that: (1) the employee was eligible for the FMLA protections; (2) the employer was covered by FMLA; (3) the employee was entitled to take leave under FMLA; (4) the employee provided sufficient notice of his or her intent to take leave; and (5) the employer denied the employee FMLA benefits to which he or she was entitled. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013). One of those FMLA rights is that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following [situations]." 29 U.S.C. § 2612(a)(1).

Here, Plaintiff alleges that IDOC interfered with her exercising of or attempt to exercise her substantive FMLA rights when it "mistakenly treated leave that should have been classified

---

[1] There is also an FMLA retaliation cause of action, but Plaintiff neither argues that it applies nor does she allege facts supporting such a claim. 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); *see also Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 992 (7th Cir. 2010).

as FMLA leave and used that to terminate [Plaintiff's] employment."(#27 p. 26). Reading the statute and the elements of an interference claim in conjunction reveals that the FMLA forbids an employer to deny an employee's right to 12 workweeks of leave during any 12-month period (assuming that the employee was both entitled to that leave and had provided sufficient notice). It is therefore the *denial of her right to take leave* that is the violation for which an employee has a valid claim. Accordingly, the violation occurs at the point at which the benefits are denied— and not, as Plaintiff argues, some point in the future when those violations are evaluated or accumulate to the point where the employment policy permits the employer to engage in an adverse employment action. The Eighth Circuit came to this same conclusion. *Reed v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009) ("An FMLA violation occurs when an employer improperly denies a request for leave.")

*B. Comparisons to Title VII*

This conclusion is supported by case law regarding the statute of limitations in Title VII discrimination suits. FMLA suits have been frequently compared to Title VII suits. Both the FMLA and Title VI are regulations on labor and employment practices, with the FMLA protecting an employee's right to take leave for family or medical reasons and Title VII of the Civil Rights Act of 1964 protecting employees from discrimination on the basis of race, color, religion, sex, or national origin. Both utilize the same *McDonnell Douglas* burden-shifting paradigm. *King v. Preferred Technical Grp.*, 166 F.3d 887, 891 (7th Cir. 1999). Both provide augmented penalties for employer retaliation. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Both are subject to equitable estoppel when an employer misrepresents a crucial fact and the employee reasonably relies on that information to his or her detriment. *Blankenship*

*v. Buchanan Gen. Hosp.*, 999 F. Supp. 832, 838 (W.D. Va. 1998). Last, the legislative history shows that Congress intended for the definitions of several critical terms in the FMLA to be applied the same way as Title VII claims. Senate Report 103-3 at p. 22-34, 1993 U.S.C.C.A.N. 3, 24 (definitions of "employer", "job equivalence", and "opposition"); *see also* House Report 103-8(I). Accordingly, in analyzing FMLA claims, an analogy may be drawn to Title VII law—which is better developed, if only by dint of age.

### *Statute of limitations under Title VII*

Title VII requires that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice *occurred*." 42 U.S.C. § 2000e-5 (emphasis added). The Supreme Court held that because the term "occurred" in that clause meant a practice "that took place or happened in the past," "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 113 (2002). "[T]he statutory term 'employment practice' generally refers to a discrete act or single occurrence that takes place at a particular point in time." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (2007), *citing Morgan*, 536 U.S. at 110-111, *abrogated on unrelated grounds by* the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. A Title VII plaintiff can only file a charge to cover discrete acts, such as termination, failure to promote, denial of transfer, and refusal to hire, that occurred within the appropriate time period. *Ledbetter*, 550 U.S. at 628.

In comparison, the FMLA's statute of limitations has a more convoluted formulation: "[A]n action may be brought under this section not later than 2 years *after the date of the last event constituting the alleged violation for which the action is brought*." 29 U.S.C. § 2617(c)

(emphasis added). Under the normal canons of statutory construction, one might expect that Congress's different choice of words should be given different effect, especially in light of the fact that the FMLA's legislative history expressly refers to Title VII. However, when faced with a fact pattern functionally identical to the one in this case, the District Court for the Western District of Michigan reasoned as follows:

> [W]hen Title VII mentions the "alleged unlawful employment practice", it is necessarily implicitly referring to the "alleged unlawful employment practice for which the action is brought." The phrase would not make sense otherwise. So FMLA refers to the "the last event constituting the alleged violation for which the action is brought", while Title VII refers to "the alleged unlawful employment practice for which the action is brought." [The plaintiff's] brief identifies no decisions holding that by referring to "the last event constituting the alleged violation", Congress and the President intended FMLA claims to be subject to a fundamentally different accrual rule than Title VII claims.

*Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 949 (W.D. Mich. 2009). In *Maher*, an employer had a policy in which employees receive "points" when they arrive late, leave early, or take unexcused absences. *Id*. at 943. After exceeding a certain number of points, an employee could be discharged. *Id*. at 944. The plaintiff there did exceed the threshold number of points and was discharged. *Id*. As in this case, that plaintiff brought an FMLA cause of action on a date that was within two years of her termination, but more than two years after she had accumulated four of the total qualifying points. *Id*. at 946. When she argued that her employer had interfered with her right to FMLA-protected leave for those absences, the *Maher* court applied Title VII's construction of the statute of limitations to the FMLA. It concluded that "the FMLA limitations period began to run for each denial of FMLA leave (and consequent contemporaneous assessment of a 'point' under the absenteeism policy) at the time that [the defendant employer] made the particular denial and assessment." *Id*. at 950.

This court comes to the same conclusion as *Maher*. While the texts of the two statutes are not identical, the difference appears to have no functional difference. If Congress had instead intended the limitations period to apply to an ongoing pattern of violations leading to an ultimate adverse employment action, it would likely have defined the operation of such an extended recovery period with greater detail than a mere throwaway clause. Or it could have endorsed or ratified the preexisting judge-made "continuing violations" doctrine in Title VII law. Plaintiff's claim would still be time-barred under Title VII's "continuing violations" approach.

*Continuing violations doctrine under Title VII*

A "continuing violation" theory of recovery may circumvent a defense that a claim is time-barred. One of several types of continuing violation theories applies when "the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred." *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120-21 (7th Cir. 1982). In *Ricks*, a black faculty member at a university was denied tenure. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 253 (1980). In accordance with university policy, he was offered, and he accepted, a contract for one additional year of employment, after which he would be discharged. *Id*. The plaintiff then filed a complaint alleging employment discrimination on a date outside the limitations period counting from the date of his denial of tenure, but within the period counting from the date his employment was terminated. *Id*. at 254. He claimed that there was an ongoing unlawful employment practice constituting a continuing violation of his civil rights spanning from his denial of tenure through his termination date. *Id*. at 257. However, the *Ricks* Court first noted that the university's policy regarding termination of employment was "a delayed, but

*inevitable consequence* of the denial of tenure." *Id*. at 257-58 (emphasis added). Then, the Supreme Court reasoned that

> [i]n order for the limitations periods to commence with the date of discharge, [the plaintiff] would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.
>
> [ * * * ]
>
> [But] the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id*. at 258 (emphasis in original). This was because "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.* (emphasis in original). As the Seventh Circuit said, in discussing *Ricks*, "[T]he violation occurred when the plaintiff knew or should have known that he had been discriminated against." *Stewart*, 679 F.2d at 121 n.2. The mere fact that there was continuity of employment is not important; "the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

Similarly, the emphasis here should be on the denial of FMLA benefits, not the time at which the consequences of the denial or misclassification "become most painful". Because Plaintiff's termination was an "inevitable consequence" (albeit a conditional one) of her repeated unauthorized absences, any alleged interference with her FMLA benefits would have occurred at the time she requested FMLA leave and was not granted it—and not when her employment was terminated. Although Plaintiff argues that the "last event" was either her termination or when IDOC treated the three absences as unauthorized to support her termination, the continuing

violations doctrine cannot apply to the facts of her case. (#32 p. 28). *See also Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 906 (N.D. Iowa 2009) (recognizing that "the courts addressing the continuing violation theory have declined to apply it to FMLA claims"). Accordingly, the continuing violations doctrine cannot save her claim from the statute of limitations.

*C. Allegedly incorrect classification of absence constitutes FMLA prejudice*

Plaintiff further argues that an employee may not bring a lawsuit alleging every technical violation of the FMLA. (#32 p. 28). Plaintiff notes that "a technical violation of an FMLA regulation does not entitle [a plaintiff] to relief unless she can demonstrate prejudice." *Murray v. AT&T Mobility LLC*, 374 F. App'x 667, 671 (7th Cir. 2010), *citing Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88-89 (2002). This court acknowledges that because "the FMLA is not a strict-liability statute,… [e]mployees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006), *citing Ragsdale*.

The issue in *Ragsdale* was in regard to the provisions of then-in-force 29 C.F.R. § 825.700(a), which stated that "if an employee takes medical leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." *Id.* There, the plaintiff-employee argued that her employer had not given her sufficient notice that her authorized absence would qualify for, and therefore, exhaust, her FMLA leave. *Ragsdale*, 535 U.S. at 85. After being authorized for, and taking, 30 weeks of leave, the plaintiff there then sought to take another 12 weeks of FMLA-qualified leave. She argued that the first 30 weeks had not been explicitly designated as FMLA leave and that she

was entitled to those 12 extra weeks under § 825.700(a). *Id*. However, the *Ragsdale* Court held that because "the regulation permitted [the plaintiff] to bring suit under § 2617, despite her inability to show that [her employer's] actions restrained her exercise of FMLA rights… Section 825.700(a) transformed the company's failure to give notice—along with its refusal to grant her more than 30 weeks of leave—into an actionable violation of § 2615." *Id*. at 90-91. The Supreme Court therefore held that 29 C.F.R. § 825.700(a) was "invalid because it alter[ed] the FMLA's cause of action in a fundamental way: It relieve[d] employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id*. at 90. Thus, *Ragsdale* held that the failure to provide sufficient notice was not prejudicial in that it did not restrain her exercise of her FMLA rights. The contested acts in the present case are categorically different.

      Here, Plaintiff contests whether her three absences were protected by the FMLA. She argues that: 1) IDOC interfered with her right to take FMLA leave when it either declined to classify her absences as FMLA leave or incorrectly classified them as non-FMLA leave; 2) IDOC's misclassification did not prejudice her because they were not typical materially adverse employment actions such as a suspension or discharge; and 3) she could not have brought an FMLA suit for those actions because she had not suffered prejudice by that misclassification or denial.

      IDOC responds that the FMLA does provide a remedy for equitable relief, 29 U.S.C. § 2617(a)(1)(B), and that the CFR permits that "[i]f an employer has violated one or more provisions of FMLA, and if justified by the facts of a particular case, an employee may receive… employment benefits." 29 C.F.R. § 825.400(c). Indeed, the Seventh Circuit opined that "wiping a point off the absenteeism slate is indeed an employment benefit." *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 751 (7th Cir. 2010). Notably, due to the difference in facts,

*Bailey* is not completely on point. In *Bailey*, the plaintiff argued that she was entitled to having her absences forgiven under the employment policy, and the issue was whether she was eligible under the terms of the FMLA to contest the loss of her alleged "employee benefit" of disregarding a prior absence. *Id.* at 750. The plaintiff here does not argue that she is entitled to having her absences forgiven, but rather, argues that because the misclassifications of her absences had no prejudicial effect, that she could not have even contested them in a judicial setting. Accordingly, she suggests that since the absences themselves could not have been contested, her termination of employment was the only (and "last") event that could be challenged. Regardless, this court agrees with IDOC. The *Bailey* court reasoned that the reclassification of an unauthorized absence as an authorized one "is a 'benefit' in approximately the sense in which granting parole is a benefit to the parolee; it reduces a penalty." *Bailey*, 600 F.3d at 750. As applied here, Plaintiff's three absences could have, and should have, been contested at that time.

In the alternative, Plaintiff's most recent absence causing actual economic damages was her ten-day suspension (with three days served) on November 28, 2007, following her unauthorized absence on October 3, 2007. Therefore, even if Plaintiff's statute of limitations does not begin to run until she suffers economic damages, her claim would have accrued on November 28, 2007. The two-year statute of limitations would have closed on November 28, 2009, thus making that the last day she could have contested that claim. Plaintiff agrees that because "she was suspended at this time it is clear that she could have brought a lawsuit at that time." (#32 p. 29). However, Plaintiff argues further because "[t]he FMLA's limitations period provides that the limitations does not expire until the 'last event constituting the alleged violation'[,] [t]he 2007 suspension was the first event that would have triggered the right to

- 16 -

pursue a claim and the 2010 termination was the 'last event.'" (*Id.*) But as this opinion has already concluded, the violation was the denial or misclassification of FMLA-protected leave, rather than any continuing violation that would permit Plaintiff to toll the statute of limitations until her termination in 2010. Accordingly, Plaintiff's claim is time-barred.

*D. Implications and consequences*

This court acknowledges that there could be unintended negative consequences of this decision. In *Ricks*, the Supreme Court noted that the Third Circuit was troubled by the following concerns:

> The Court of Appeals believed that the initial decision to terminate an employee sometimes might be reversed. The aggrieved employee therefore should not be expected to resort to litigation until termination actually has occurred. Prior resort to judicial or administrative remedies would be likely to have the negative side effect of reducing that employee's effectiveness during the balance of his or her term. Working relationships will be injured, if not sundered, and the litigation process will divert attention from the proper fulfillment of job responsibilities.

*Delaware State Coll. v. Ricks*, 449 U.S. 250, 255-56 (1980) (internal quotation marks omitted).

The Sixth Circuit had similar reservations:

> Plaintiff's termination was the first material adverse action in this case, because it was the first action serious enough to warrant plaintiff's resort to the legal system. To hold otherwise would force plaintiffs to bring suit each time they are assessed a negative mark on their absentee record, but before this mark results in probation, termination, failure to reinstate, or other adverse action. As [the plaintiff] notes in her brief, such a requirement would unnecessarily clog the federal courts with premature claims.

*Butler v. Owens-Brockway Plastics Products, Inc.*, 199 F.3d 314, 317 (6th Cir. 1999). It is true that requiring employees to contest each denial of FMLA leave as a separate lawsuit might indeed "clog the federal courts" with claims of minimal prejudice. However, this court disagrees

that they would necessarily be "premature". For one, standing to sue is a factual matter, rather than based on a potential plaintiff's gauge of whether an action is "serious enough" to resort to the legal system. More so, though, the way Plaintiff wants it, employees would be able to decline to contest any denial of FMLA leave, and hold that as a trump card indefinitely. If the "reset period" elapses and those absences are forgiven, then, all's well that ends well. If, however, the employee accumulates enough absences that he or she is discharged, then, he or she may bring a suit to challenge the denial of FMLA leave that had occurred in some far-flung past. That is precisely what a statute of limitations seeks to avoid. A statute of limitations "represent[s] a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Ledbetter*, 550 U.S. at 630, *citing U. S. v. Kubrick*, 444 U.S. 111, 117 (1979). Since the inevitable consequence of an accrual of unauthorized absences is termination of employment, if an employee feels like an absence ought to be protected by the FMLA, he or she should contest that decision in a timely manner.[2]

## II. *Res judicata* and merits of claim

Because Plaintiff is time-barred by the FMLA's statute of limitations, this court need not address IDOC's arguments of claim and issue preclusion. Nor need it discuss the merits of Plaintiff's claim.

---

[2] Of course, nothing in this opinion precludes the applicability of equitable tolling if an employee "has been lulled into inaction" by the "active deception" of others. *Packard v. Cont'l Airlines, Inc.*, 24 F. App'x 960, 962 (10th Cir. 2001)

IT IS THEREFORE ORDERED THAT:

(1) IDOC's Motion for Judgment on the Pleadings (#18) is MOOT.

(2) IDOC's Motion to Strike (#21) is DENIED.

(3) IDOC's Motion for Summary Judgment (#24) is GRANTED.

(4) Plaintiff's Motion for Partial Summary Judgment (#26) is DENIED.

(5) Plaintiff's Motion to Supplement (#28) is GRANTED.

(6) This case is terminated.

ENTERED this 26th day of July, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE